REFORMED DUTCH CHURCH OF SUMMIT v. HARDER *et al.*

(*Supreme Court, General Term, Third Department.* November 26, 1890.)

1. RELIGIOUS SOCIETIES—DEED TO TRUSTEES—INCORPORATION OF SOCIETY.
   In 1830, land was conveyed to trustees to hold for the use of a church "as long as they shall continue to occupy the said premises for that purpose, and not to be transferred or occupied for any other purpose, and, whenever the said church shall abandon the said premises, then this title to cease." A church was erected by the society, which was not then incorporated, and services were held therein, by missionaries, until 1855, when the building was repaired and dedicated, the society regularly organized, according to the usages of the denomination to which it belonged, and became a member of a *classis* thereof; a pastor was installed, church records were commenced, and regular services were held until 1859. Thereafter, the pastor withdrew, services became infrequent, and ceased after 1880, and there was no election of officers after 1857 until 1886. The *classis*, in 1879, passed a resolution that the church be dissolved; but this was not executed, and, in 1886, the *classis* declared its former action inoperative, and recognized the continued and regular existence of the church. The building had been occasionally used for secular purposes, but not by the society or the trustees, and such use did not interfere with its use for worship. *Held*, that the trustees took the title in trust for the society, subject to the terms of the deed, to hold until the society should be incorporated; and that, on its incorporation in 1887, it succeeded to the title which till then remained in the trustees.

2. SAME—ABANDONMENT OF PREMISES.
   The finding of the jury that there had been no abandonment of the premises by the society was sustained by the evidence.

3. SAME—CERTIFICATE OF INCORPORATION—TRUSTEES.
   Under the provision of Laws N. Y. 1813, c. 60, § 2, relating to incorporation of religious societies, that, if there be no minister, the elders and deacons elected according to the rules and usages of such churches shall be the trustees, and may incorporate by executing the prescribed certificate, which is to be acknowledged or proved, and recorded, such a certificate, regular in form, and containing recitals showing that the persons executing it were for the time being such trustees, is *prima facie* evidence of the truth of its recitals, where subsequent user of the corporate rights is shown, as by holding religious meetings.

Appeal from circuit court, Schoharie county.

Action by the Reformed Dutch Church of the town of Summit against William L. Harder and Stanton P. Harder, for trespass. Defendants appeal from a judgment entered upon the verdict of a jury upon the trial at the Schoharie circuit in January, 1890, and from the order denying the motion made upon the minutes for a new trial. The complaint, alleging the incorporation of the plaintiff, charged the defendants with trespass in entering upon the lot of which the plaintiff was the owner, and in possession, and in cutting and carrying away wood, and injuring its church edifice thereon, and taking away its personal property therefrom. The answer contains a general denial, and specifically avers that the plaintiff was never incorporated, and is not an existing corporation; alleges title of the defendant Stanton P. Harder in the premises, and that by virtue thereof he peacefully entered into possession thereof, and, as such owner, lawfully did cut and remove some of the timber therefrom, and some portions of the church edifice, but only took possession of personal property in order to preserve it for the owners, disclaiming any conversion thereof, and that the acts of the defendant William L. Harder were merely in aid of Stanton P. Harder's lawful action. The acts constituting the alleged trespass were done in 1885, and afterwards, and the claim of the defendant was that the trustees of the church and the society

had, prior to that date, abandoned the premises; that they were suffered to be used for other than church purposes, and thus, by virtue of the terms of the grant under which they held, their title had ceased; that they were never incorporated; and that, if they were, it was not until 1887, and the corporation did not become revested of the premises.

In 1830, and for several years prior thereto, there was a religious society at Eminence, in the town of Summit, Schoharie county, called the "Dutch Reformed Church of Eminence." In 1828, John A. King gave a perpetual lease to James Ham of lot No. 47, in the Blenheim patent, containing 120 acres, reserving an annual rent. Ham in 1829 assigned this lease to Colby Reed, but Ham continued in possession. In February, 1830, Reed and Ham conveyed 2 acres of said lot 47 to George Felter, and 3 others, "trustees of the Dutch Reformed Church in the town of Summit,  *  *  *  in their actual possession now being, and to their successors in office,  *  *  *  to have and to hold the said described premises for the use of the Dutch Reformed Church of the town of Summit, for the purpose of erecting a house for divine worship, and as long as they shall continue to occupy the said premises for that purpose, and not to be transferred or occupied for any other purpose; and, whenever the said church shall abandon said premises, then this title to cease to the said parties of the second part, their successors in office." A church building was then erected and maintained by the society. Such building still exists, but the defendants, by the acts in this action complained of, have in part destroyed the same.

The Dutch Reformed Society of Eminence was feeble, but, from 1830 to 1855, religious services were held in the building, under the direction of missionaries, and other supplies. In 1855, the building was repaired, and a regular official organization existed according to the usages of the Dutch Reformed Church of America. The church became a member of the *classis* of Schoharie. The church building was dedicated, a pastor installed, and church records were commenced. Regular services were thereafter held until 1859, when the pastor withdrew, and his pastoral relation was duly dissolved. After 1859, religious services were continued, under the lead of ministers supplied by the *classis* of Schoharie; but the supply became irregular, and the services infrequent. Since 1880, there has been no preaching in the building. Occasionally the building was used for secular gatherings, such as musical and other entertainments, debates, and political meetings. In September, 1886, the *classis* of Schoharie, appointed a pastor to preach there, but the defendant Stanton P. Harder claiming in 1885, and ever since, that the church lot had reverted to him, under the terms of the deed of 1830, so dismantled the church building that it was impracticable to hold services in it, and services have, since 1886, been held in the neighboring houses. There was no election of officers after 1857 until 1886. In 1876, the *classis* of Schoharie appointed a committee to examine into the condition of the Reformed Dutch Church at Eminence, and make report. The committee reported to the *classis* that "the church is practically dead. There is no prospect, even in the distant future, that it could be made a self-sustaining church. Administration should be had upon what there is of the estate, and we recommend that *classis* take such action in this direction as they think best." The *classis* thereupon resolved: "*First*, that the church at Eminence be dissolved; *second*, that the trustees of *classis* take the necessary steps to secure the property for the present, and the interests of the Reformed Church in it, and, should said trustees deem it best, to remove the bell, and dispose of the interest which the Reformed Church may possess in the property to the best advantage." No further action was taken by the *classis* in the matter until 1886, when the *classis* appointed a committee "to inquire into the legal *status* and relations of such property, and advise with the brethren at Eminence as to their wishes thereto." This committee reported that the church had never been dissolved,

for the reason that the action of the *classis* was irregular and incomplete,—irregular because without previous notice to the members of the consistory, and incomplete because the declaratory deliverance of the *classis* was not accompanied and followed by suitable dismission of members of the church to other churches, and because the members of the consistory had received no official notice of what they should do. The committee further reported that the members of the church supposed themselves incompetent to act further as a church organization; that they had never abandoned the church premises, but supposed that *classis* had tied their hands. Thereupon the *classis* resolved that its former action for the dissolution of the church was inoperative, and that the church of Eminence be restored to the roll of the *classis*. The same committee reported, and the fact was, that there were members of the church of Eminence still remaining, whose relation had never been transferred to any other church, among whom were an elder and a deacon thereof; that these members met, and, in due form, resolved that the surviving elder, Jeremiah Allen, and the surviving deacon, Joseph L. Pitcher, be recognized as the consistory and trusteeship of the Reformed Dutch Church of Eminence; and that these brethren, being present, held a meeting as consistory, and elected Elder Allen delegate to the *classis*, and president of the consistory, and Deacon Pitcher as secretary of consistory, and treasurer of the church. The *classis* approved this action of the church and consistory, and received Elder Allen as a member of the consistory. This was in November, 1886. There were then seven surviving members of the church.

January 4, 1887, the "certificate of incorporation of the Reformed (Dutch) Church of Summit, Schoharie Co., N. Y.," was filed and recorded in the Schoharie county clerk's office. It was executed and acknowledged by said Allen and Pitcher, and F. H. Cleveland. They therein certify that at a meeting of the Reformed (Dutch) Church of the town of Summit, worshipping at and in the building known as the "Reformed (Dutch) Church of Eminence," and, for the time being, at the residence of Sarah A. Sweet, held December 21, 1886, "the succession of consistory and of trusteeship was, in due order, and in accordance with the laws and usages of the religious denomination known as the 'Reformed (Dutch) Church in America', continued and maintained by the re-election of said Jeremiah Allen as elder, and the election of the former deacon, Joseph L. Pitcher, as elder, and of the said F. H. Cleveland as deacon; and that the ordination to office, as required by the constitution of said religious denomination, took place in due order on the third day of January, 1887." The certificate, in its further recitals and its acknowledgment, substantially conforms to the requirements of section 2, c. 60, Laws 1813, relative to the incorporation of unincorporated trustees of the Reformed Protestant Dutch Church. It recites that the corporate name shall be the "Reformed (Dutch) Church of Summit, New York." Thereafter this action was brought.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*M. S. Wilcox* and *W. C. Lamont*, for appellants. *F. R. Gilbert*, for respondent.

LANDON, J. The conveyance by Reed and Ham, in 1830, to Spickerman and others, trustees, vested in them and their successors, under the Laws of 1813, c. 60, § 4, the title to the lot in question in trust for the religious society, subject to the terms of the deed, to hold the same until the society should be incorporated. *Church of Redemption* v. *Grace Church*, 68 N. Y. 570. Of course if, before the incorporation, the term of the title to the lot, pursuant to the terms of the deed, had ceased, the subsequent incorporation could not vest it in the corporation, nor divest those of it who had meantime become vested of it. But if, upon such incorporation, the title still remained in the trustees, in trust for the society, the corporation would then succeed to their

legal title. *Church* v. *Witherell*, 3 Paige, 299; *Church* v. *Bly*, 73 N. Y. 323. By the terms of the deed, the trustees were to have and to hold the premises "as long as they shall continue to occupy them" for divine worship, "and not to be transferred or occupied for any other purpose, and, whenever the said church shall abandon said premises, then this title to cease." These provisions were not conditions subsequent, subjecting the title to forfeiture upon re-entry or judgment to that effect, but limitations upon the title specifying when it should cease. 4 Kent, Comm. 126; *Mayor* v. *Stuyvesant*, 17 N. Y. 34. At least this was the view of the trial court, and is the most favorable view for the defendants. The society or trustees never transferred the premises, and never occupied them for other purposes than for divine worship. Occasionally, and rarely, on other days or evenings than Sunday, there were gatherings in the church edifice for secular purposes. But such gatherings do not appear to have been any interference with the main use of the church edifice, and it would be too narrow a construction to hold that they put an end to the title. The fair meaning of the restrictive clauses of the deed is that, when the premises shall be transferred or occupied for secular uses, to their permanent disuse for divine worship, the church, that is the religious society, thus or otherwise abandoning the premises, then the title should cease.

The trial judge left it to the jury to determine upon the evidence whether any such abandonment had taken place. The jury found it had not. The evidence supports the verdict. The society was brought near extinction, but it survived. The defendants urge that the church was dissolved by the decree of the Schoharie *classis*, in 1879. This church was a member of that *classis*, and, under the constitution of the Reformed (Dutch) Church, was amenable to its jurisdiction in the matter of "disbanding" it as a congregation of that denomination. Chapter 55, Laws 1880, amending section 3, c. 110, Laws 1876, so as to confer jurisdiction upon such governing body to determine when such a church had become extinct, not then existing, could not apply to this case. Chapter 381, Laws 1875, amended by chapter 177, Laws 1877, has reference to the Presbyterian denomination, as plainly appears from its provisions and phraseology, and does not apply to the Reformed (Dutch) Churches. But conceding the jurisdiction of the *classis* to disband this congregation, (*Connitt* v. *Church*, 54 N. Y. 551,) it did not actually disband or dissolve it, but authorized some steps to be taken for that purpose, which were never actually taken. The decree or resolution was never executed. It appears to have been made without notice to the "brethren at Eminence," and without provision for their transfer to other churches. The same *classis* in 1886 reviewed its action of 1879 in the matter, and pronounced it inoperative. The *classis* then, upon an examination of the matter, and upon hearing the brethren at Eminence, held that the action of 1879 had not dissolved the church, and it recognized and affirmed its continued and regular existence. So far as this is an ecclesiastical question, we accept the final decision of the *classis*. *Connitt* v. *Church*, *supra*. It does not conflict with the verdict of the jury. The title to the premises, therefore, was in the trustees, in trust for the society, at the date of its incorporation.

The defendants insist that no legal incorporation was effected. In January, 1887, this church had no minister. By section 2, c. 60, Laws 1813, if there be no minister, then the elders and deacons elected according to the rules and usages of such churches shall be the trustees for every such church and congregation, and may incorporate by assembling together, and executing "under their hands and seals a certificate certifying the name or title by which they and their successors forever as a body corporate, by virtue of this act, shall be known and distinguished." The certificate must be acknowleged or proved, and recorded in the county clerk's office. The certificate recorded in the Schoharie county clerk's office contains all the recitals necessary to

show that the persons executing it were for the time being the trustees of the church. The certificate is regular in form, and therefore is *prima facie* evidence of the truth of its recitals, where, as in this case, there is proof of the subsequent user of the corporate rights of the body. *Church* v. *Pickett*, 19 N. Y. 482. The subsequent user here shown was the resumption and continuance of religious meetings after filing the certificate of incorporation. Besides, there is proof outside of the certificate of the official character of the persons making it. We think the plaintiff's existence as a corporation was shown. The question of damages was fairly submitted to the jury. The evidence tends to show that whatever wood was cut and taken away was cut and taken under the direction of the defendants. The judgment should be affirmed, with costs. All concur.